### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

**JOSHUA S. FRIEBEL and
ELIZABETH F. FRIEBEL,
husband and wife,**

     **Plaintiffs,**

**vs.**                     **CASE NO. 5:10-cv-120/RS-EMT**

**PARADISE SHORES OF BAY COUNTY,
LLC, a Florida limited liability company;
ROBERT E. BLACKERBY, an individual;
MAGNUM CAPITAL, LLC, a Florida limited
liability company; DURDEN ENTERPRISES
II, INC., a Delaware corporation; DURDEN
ENTERPRISES, LLC, a Florida limited
liability company; ESTATE OF KEDRICK
EARL DURDEN; MICHAEL EARL DURDEN,
as Personal Representative of the Estate of
Kedrick Earl Durden; and MH I, LLC, a Florida
limited liability company,**

     **Defendants.**
_____/

### JUDGMENT

**Procedural History**

     The procedural history of this case is complicated.  In May 2010, Plaintiffs filed a

ten-count complaint alleging defects in the condominium unit they purchased from

certain defendants or defendant related entities.  (*See* Doc. 1).  The Plaintiffs amended

their complaint in September 2010.  (*See* Doc. 38).  This Amended Complaint added

additional defendants and claims.  I granted summary judgment in favor of some

defendants as to certain claims.  (*See* Docs. 133 & 160).  A nonjury trial was conducted before the Court June 27, 2011, through July 1, 2011.

Midway through trial, Plaintiffs dismissed Defendants Durden Enterprises II, Inc., Durden Enterprises, LLC, Estate of Kedrick Earl Durden, and Michael Earl Durden. ("Durden defendants").  In addition, Plaintiffs dismissed numerous claims against Defendant Paradise Shores of Bay County LLC, ("Paradise Shores").  (Tr. 442).  Later, Plaintiffs entered into a settlement agreement with Defendants Robert E. Blackerby, MH I, LLC, and Magnum Capital, LLC ("Blackerby defendants").  (Tr. at 545-546).  As a result, *Plaintiffs* agreed to pay the *Blackerby defendants* $100,000, and dismiss the Blackerby defendants with prejudice.  *Id.*  After Plaintiffs rested their case (Tr. 555), Plaintiffs terminated their relationship with their lawyer and elected to proceed *pro se*. (Tr. at 589-90); (Doc. 328).

At the close of the trial, all that remained were five-counts against Paradise Shores: Count I for fraud, Count II for fraudulent concealment, Count VII for Breach of Contract, Count VIII for Breach of Warranty, and Count XI seeking recission.  (Tr. 422). Following trial, the parties submitted their proposed findings of fact and conclusions of law.  (Docs. 353 & 361).  Before I could consider these post-trial briefings, Plaintiffs filed for bankruptcy.  (*See* Doc. 358).  Judgment in this case has been stayed pending resolution of the bankruptcy case. (*See* Doc. 368).  This stay has now been lifted for the sole purpose of entering judgment in this case.  (Doc. 368, Attach. 1).

**Findings of Fact**

Plaintiffs, husband and wife, entered into a Purchase and Sale Agreement for Unit 204 at the Paradise Shores Condominiums in Mexico Beach, Florida on July 10, 2005. (PE 1). Plaintiffs signed the agreement, and Robert Blackerby also signed as an authorized agent for Paradise Shores. *Id.*   Nearly two years after signing the Agreement, on June 19, 2007, the property in question was conveyed by warranty deed from the grantor, Paradise Shores, to the Plaintiffs.  (PE 3). Plaintiffs paid $354,900 for their unit.

Plaintiffs rented their unit for two years with no complaints.  (Tr. 332).  During this period they were unaware of any structural defects. (Tr. 355). After taking possession of unit 204, the Plaintiffs allege that they became aware of numerous defects including, among other things, mold, water intrusion, plumbing leaks, and structural defects.  (*See* Doc. 38).  Plaintiffs stopped renting the unit after they because aware of the problems, losing approximately $13,900 per year in rental income.  (Tr. 351).  No governmental authority has prohibited renting the units.  (Tr. 366).

Construction of the condominium building began in May 2005.  Like many construction projections, certain problems were encountered and were remedied.   The parking garage flooded, soft soil was encountered, balconies were improperly sloped, and certain structural defects were discovered.  (Tr. 113-115, Tr. 152-153).  The structural defects are at the heart of Plaintiffs case.  Specifically, the concrete floor slabs on several floors were "deflected."  Deflection is a bowing in a span of concrete flooring which makes the surface unlevel and occurs, to some extent, in all concrete.  (Tr. 115-116).  In this case, the deflection was caused by an insufficient amount of rebar placed into those

affected slabs.   This deflection caused certain long spans of concrete to bow as much as three inches. An average amount of deflection would have been one inch to one and a half inches. (Tr. 120, Tr. 154-55, Tr. 191).  The second significant problem was that insufficient concrete had been poured in and around the electrical room which exposed conduits which were spaced too closely together.  (Tr. 120-22, Tr. 155, Tr. 141-44, Tr. 191).  None of the structural issues directly adjoined plaintiffs' unit.  (Tr. 174).

After discovering the structural defects, the structural engineer of record, John Hurst, P.E., and Hodnett-Hurst Engineers, and the architect, Larry Taylor, designed plans and specifications to remedy the defects.  (Tr. 99; Tr. 130-31, Tr. 155-57).  The structural engineer of record certified the repair plans and copies of the plan were provided to the Michael Hodges, the building official for the City of Mexico Beach, Florida.  The City of Mexico Beach approved the repair plan and issued a certificate of occupancy.  (Tr. 163, Tr. 605, Tr. 616-19, DP 7, DP 8, DP 14).

The repair plan called for the installation of additional structural columns, supports, and steel plates into recessed channels along the top of concrete floor slabs in certain locations.  (Tr. 121, Tr. 125-26, Tr. 155-57).  This combination of steel plates and additional columns made the "building stronger now that it's ever been, or could have been." (Tr. 125).  The remediation also included the installation of a leveling compound on top of the deflected slabs after installation of the plates for the purpose of achieving a level surface, sealing the plate components, and providing additional strength.  (Tr. 163-165).  The deflection was remedied in all units including Plaintiffs' unit. (Tr. 116).  Likewise, the conduit had been appropriately repaired (Tr. 168).  At the time Plaintiffs

closed on their unit until today, these remediation measures left the concrete slabs level and structurally sound.  (Tr. 125-26, Tr. 207-08, Tr. 213, Tr. 215-16).

The repair of the conduit area was somewhat different.  A second slab was poured directly beneath this area and attached to the first slab with steel plates and brackets.  The conduits were left in place.  The second slab acted as a new structural member carrying the load of the defective first slab—like the first slab was sitting on a table.  This repair remedied the code violations.   (Tr. 724-25).

Plaintiffs' structural engineering expert, Mr. Mehltretter, testified that the deflection had not been fixed.  (Tr. 275-80).  This is technically true. "You can't correct deflection.  You can [only] correct the problem." (Tr. 197).  Deflection will forever be in the slab, but the slabs have been structurally secured and the leveling compound has made them flat.   (Tr. 197).  Steel plates will prevent further deflection. (Tr. 277).

 The remedial measures satisfied the engineer of record, Mr. Matthewson, who testified that the building was structurally sound and safe for occupancy. (Tr. 812, Tr. 825).  They satisfied Mr. Gershen, a certified general contractor, who was engaged by Defendants to oversee the repair work.  (Tr. 190-91, Tr. 207-08). Mr. Taylor, the architect was satisfied.  (Tr. 660-66).  They satisfied the engineers at ECM, a firm engaged by Mr. Gershen.  (Tr. 209).  Mr. Mehltretter, Plaintiffs' key witness, admitted that Defendant would be entitled to rely upon ECM and its analysis.  (Tr. 314). Defendant made no disclosures to Plaintiffs regarding the deflection or repairs.

Mr. Heifner, a retained professional engineer and licensed Florida structural engineer found no evidence of structural damage as recently as February 2011.  No

competent evidence was introduced which showed a decrease in value related to the

repairs or the cost to repair the unit.  Plaintiffs have not performed any repairs

themselves.  (Tr. 370-71).  (Tr. 854-64).   Mr. Terry, a retained property appraiser found

no decrease in value attributable to structural issues.  (Tr. 760-61).

**Conclusions of Law**

Plaintiffs' first two counts, for fraud and fraudulent concealment are virtually

identical.  They require (1) A false statement concerning a material fact; (2) Knowledge

by the person making the statement that the representation is false; (3) The intent by the

person making the statement that the representation will induce another to act on it; (4)

Reliance on the representation to the injury of the other party. *Tucker v. Mariani*, 655 So.

2d 221 (Fla. 1st DCA1995) (discussing common law fraud).  Fraudulent concealment has

the added element of a duty to disclose. *See Johnson v. Davis*, 480 So. 2d 625, 628 (Fla.

1985).  Here, the only issue is whether the structural problems and the subsequent repairs

were material facts which should have been disclosed.

Plaintiffs have not met their burden because the evidence in the record

demonstrates that Defendant was reasonable in relying on the assurances of the engineer

of record, the architect, their retained certified general contractor, the engineers at ECM,

and the city issued certificate of occupancy.  Florida law does not require that a "history

of construction" be provided to purchasers.  Defendants were reasonable to believe that

the repairs were adequate and that no disclosures had to be made.  Further, Plaintiffs have

failed to establish that the repairs were actually inadequate or that the value of the unit

has been diminished.  *See Spitale v. Smith*, 721 So. 2d 341 (Fla. 2d DCA 1998) (reasonable belief that problem was not 'major defect' is not material fact).

The Breach of Contract claim likewise fails.  The purchase and sale agreement provides that the developer may make "changes in the plans and specification as may be required by sound construction, architectural or engineering practices."   (PE 1at 8). The repairs fall within this clause of the contract.  Plaintiffs have not established that a breach occurred.

As to the claim for Breach of Warranty, Florida Statute section 718.203 (1) provides that a "developer shall be deemed to have granted to the purchaser of each [condominium] unit an implied warranty of fitness and merchantability.  Plaintiffs have failed to establish that their unit is unfit.  The certificate of occupancy undermines Plaintiffs' case.

As to Plaintiffs' claim for recission, Plaintiffs' have failed to establish an actionable cause which would require this equitable remedy.

**IT IS ORDERED**:

1.  Judgment is entered in favor of the remaining Defendant, Paradise Shores of Bay

    County, LLC, and against Plaintiffs, Joshua S. Friebel and Elizabeth F. Friebel, on

    all claims, counts and relief sought by them.

2.  Plaintiffs shall take nothing by this action.


**ORDERED** on March 19, 2012.


/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**